# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SARA AL-AZIZ

## DEFENDANTS
OPUS IVS, INC. ; MARC MILITELLO ; AMANDA KOTSILIDIS

**(b)** County of Residence of First Listed Plaintiff: Washtenaw County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Washtenaw County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R.J. Cronkhite ( P78374 ) and Christopher A. Chesney ( P80969 ) / Cronkhite Counsel PLLC 370 E. Maple Rd., Third Floor, Birmingham, MI 48009 248-220-6031

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*CIVIL RIGHTS*
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

*PRISONER PETITIONS*
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Family Medical Leave Act and Americans With Disabilites Act

Brief description of cause:
Claims under the Family Medical Leave Act, the ADA, along with PDCRA related claims.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** >75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: April 4, 2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ R.J. Cronkhite

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes :

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SARA AL-AZIZ**, an individual,

    *Plaintiff*,

v.

**OPUS IVS, INC.**, a Delaware corporation,
**MARC MILITELLO**, an individual,
and **AMANDA KOTSILIDIS**, an individual,

    *Defendants.*

Case No.
Hon.

**JURY TRIAL DEMANDED**

---

R.J. Cronkhite (P78374)
Christopher A. Chesney (P80969)
Cronkhite Counsel PLLC
370 E. Maple Rd, Third Floor
Birmingham, MI 48009
T: (248) 220-6031
F: (248) 245-2555
rj@cronkhitelaw.com
chris@cronkhitelaw.com
*Attorneys for Plaintiff*

---

## COMPLAINT AND JURY DEMAND

Plaintiff Sara Al-aziz ("**Al-aziz**" or "**Plaintiff**"), through her attorneys Cronkhite Counsel PLLC, files her Complaint and Jury Demand against Defendants Opus IVS, Inc., Marc Militello, and Amanda Kotsilidis, stating as follows:

## NATURE OF THE DISPUTE

1. This suit involves Defendants' illegal discrimination and retaliation against Al-aziz in violation of Federal and Michigan law, including the Family and Medical Leave Act of

1993, 29 U.S.C. §§ 2601 *et seq.* (the "**FMLA**"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "**ADA**"), and Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* (the "**PDCRA**").

## PARTIES

2. Plaintiff Sara Al-aziz is an individual residing in the City of Ypsilanti, Washtenaw County, Michigan.

3. Defendant Opus IVS, Inc. ("**Opus**") is a Delaware corporation with its principal place of business located in, and conducting business in, Dexter, Washtenaw County, Michigan.

4. Upon information and belief, Defendant Marc Militello ("**Director Militello**") is an individual resident of Livingston County, Michigan.

5. Upon information and belief, Defendant Amanda Kotsilidis ("**Chief HR Kotsilidis**") is an individual resident of Livingston County, Michigan.

6. Director Militello is employed by Opus as its Director of Sales.

7. Chief HR Kotsilidis is employed by Opus as its Chief Human Resources Officer.

8. At all relevant times, Director Militello was an agent of Opus.

9. At all relevant times, Chief HR Kotsilidis was an agent of Opus.

## JURISDICTION AND VENUE

10. On March 21, 2025, Al-aziz timely filed a charge of employment discrimination on the basis of disability against Defendants with the Equal Employment Opportunity

Commission ("**EEOC**") within 300 days of the commission of the unlawful employment practices alleged in this claim.

11. Al-aziz received notification of the right-to-sue letter from the EEOC on April 3, 2025, and has filed this Complaint within 90 days of receiving the EEOC's notice of the right to sue.

12. This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331: federal questions arise under both the FMLA and the ADA.

13. With respect to any claims asserted herein that fall outside of the Court's original subject matter jurisdiction, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because all of the asserted state law claims arise out of a common nucleus of operative facts and form part of the same case or controversy.

14. This Court has personal jurisdiction over Director Militello pursuant to MCL 600.701 because Director Militello is domiciled in the State of Michigan.

15. This Court has personal jurisdiction over Chief HR Kotsilidis pursuant to MCL 600.701 because Chief HR Kotsilidis is domiciled in the State of Michigan.

16. This Court has personal jurisdiction over Opus pursuant to MCL 600.711 because Opus is incorporated in Michigan and because Opus carries on a continuous and systematic part of their general business within the State of Michigan.

17. This Court also has personal jurisdiction over Director Militello and Chief HR Kotsilidis pursuant to MCL 600.705, and over Opus pursuant to MCL 600.715, because each

Defendant committed torts within the State of Michigan and the consequences of those torts also occurred within the State of Michigan, as set forth herein.

18. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District.

**GENERAL ALLEGATIONS**

19. Al-aziz has two distinct but interrelated disabilities—depression and anxiety—and has been medically diagnosed with both depression and anxiety.

20. Depression qualifies as a disability under the ADA and PDCRA.

21. Anxiety qualifies as a disability under the ADA and PDCRA.

22. In September of 2021, Opus hired Al-aziz as an Onboarding and Retention Specialist ("**OR Specialist**").

23. Al-aziz served Opus with skill and fidelity.

24. Opus routinely and annually praised Al-aziz's performance.

25. Opus consistently rewarded Al-aziz's exceptional performance by giving Al-aziz annual raises, bonuses, and promotions.

26. Al-aziz routinely received exceptional performance reviews during her time at Opus.

27. Opus was so pleased with Al-aziz's performance that, in May of 2022, Opus promoted Al-aziz to Onboarding and Retention Lead and increased Al-aziz's pay.

4

28. A year later, in June of 2023, Al-aziz was again promoted, this time to Onboarding and Retention Supervisor ("**OR Supervisor**").

29. The OR Supervisor position was a management-level role, and involved supervising employees.

30. Opus was again so pleased with Al-aziz's performance that, in spring of 2023, Opus informed Al-aziz that it intended to promote Al-aziz to Program Manager for the newly contracted "Collision State Farm" project.

31. The Program Manager role was a management-level role and involved supervising more employees.

32. Thereafter, Al-aziz in fact worked as acting Program Manager of the Collision State Farm project.

33. While OR Supervisor and Program Manager, Al-aziz was now responsible for managing and supervising two teams of employees, including an individual employee named Reilly Schill ("**Schill**").

34. Al-aziz served Opus with skill and fidelity while acting as Program Manager of the Collision State Farm project.

35. In November of 2024, Al-aziz was experiencing symptomology relating to her depression and anxiety.

36. At this time, Director Militello and Chief HR Kotsilidis managed and supervised Al-aziz.

37. On or about November 15, 2024, Al-aziz formally submitted FMLA leave paperwork to Opus due to Al-aziz's depression and anxiety.

38. Al-aziz took FMLA leave from November 11, 2024, through January 29, 2025.

39. On January 30, 2025, Al-aziz returned to work; Director Militello avoided Al-aziz and would not look her in the eyes.

40. Within ninety minutes of Al-aziz's first day back at Opus, Chief HR Kotsilidis called Al-aziz to her office for a meeting with her and Opus Human Resources Manager Jessica Holleman; Director Militello was not in attendance.

41. During that meeting, Al-aziz was demoted to a fictional position entitled Onboarding & Special Projects Specialist ("**OSP Specialist**").

42. OSP Specialist job description and responsibilities were identical to that of Al-aziz's entry-level role in 2021 as an OR Specialist; all that changed was the job title.

43. In other words, on January 30, 2025, Al-aziz was demoted from a management-level, supervisor role to a non-management, non-supervisor role.

44. Al-aziz also learned that, approximately a week before she returned from FMLA leave, Defendants promoted her former subordinate, Schill, to manage the Collision State Farm project in lieu of Al-aziz.

45. Schill assumed Al-aziz's prior duties and responsibilities that Al-aziz previously performed as acting Program Manager of the Collision State Farm project, including leading the same meetings and supervising the same subordinates.

46. Defendants also gave Schill credit for Al-aziz's work performed prior to taking her FMLA leave.

47. A few days later after the above January 30 demotion meeting, Chief HR Kotsilidis met with Al-aziz again, this time with Director Militello present.

48. Chief HR Kotsilidis cautioned Al-aziz to not use the term "demotion" to describe her demotion to anyone else.

49. Chief HR Kotsilidis initially claimed Al-aziz's demotion was because Opus eliminated the OR Supervisor position as part of an unspecified organizational change.

50. When Al-aziz pushed back on this explanation for her demotion, Defendants made a number of stunning admissions.

51. Chief HR Kotsilidis told Al-aziz that, based on her disabilities and FMLA leave, Al-aziz was incapable of supervising others and was therefore being removed from the role she had prior to her FMLA leave.

52. Chief HR Kotsilidis went on to tell Al-aziz that Defendants could not launch an upcoming new project with State Farm with Al-aziz in a managerial role because of Al-aziz's disabilities.

53. Chief HR Kotsilidis also told Al-aziz that Defendants needed someone dependable and that removing Al-aziz from her management role was for Opus's wellbeing.

54. Chief HR Kotsilidis remarkably told Al-aziz that her demotion was actually an accommodation due to Al-aziz's disabilities.

7

55. Al-aziz responded to Chief HR Kotsilidis by telling her that Al-aziz never requested that Defendants "accommodate" her by removing her from her role, let alone by stripping her of managerial responsibilities.

56. Chief HR Kotsilidis had no intelligible response to Al-aziz's point that she never requested such an accommodation.

57. During the same meeting, Director Militello admitted that Al-aziz had a fantastic skillset but that Al-aziz's FMLA leave paperwork and related disabilities resulted in Defendants removing Al-aziz from her management position.

58. On February 28, 2025, Al-aziz met with Director Militello for her 2024 performance review.

59. Despite previously receiving "exceeds expectations" ratings prior to her FMLA leave starting in November of 2024, Director Militello downgraded her to a "meets expectations" rating during her 2024 performance review.

60. Director Militello lowered Al-aziz's 2024 performance evaluation as a direct result of Al-aziz's disabilities and FMLA leave.

61. Director Militello lowered Al-aziz's 2024 performance evaluation also as a pretextual effort to justify Defendants' illegal demotion.

62. As a result of her demotion, reduction in job responsibilities and authority, reassignment to a lesser employment role, downgraded employment evaluations, and other adverse employment actions, Defendants constructively discharged Al-aziz.

63. On March 14, 2025, Al-aziz resigned from Opus due to Defendants' constructive discharge.

64. Defendants are jointly and severally liable for their unlawful discrimination and retaliation against Al-aziz, as well as for interfering with Al-aziz's rights, including under the FMLA, the ADA, and the PDCRA.

## COUNT I
### FMLA Violations: Discrimination, Retaliation, and Interference
### [Against all Defendants]

65. Al-aziz incorporates her preceding allegations as if restated below.

66. At all relevant times, Al-aziz was an eligible employee under the FMLA, namely in that her above depression and anxiety constituted serious health conditions.

67. At all relevant times, Defendants, individually and collectively, were Al-aziz's eligible employer under the FMLA.

68. At all relevant times, Al-aziz qualified for leave under the FMLA.

69. Al-aziz engaged in protected activity under the FMLA by requesting and taking FMLA-qualifying leave from Defendants.

70. After Al-aziz exercised her FMLA rights, Defendants took materially adverse employment actions against Al-aziz by, among other things, demoting Al-aziz, falsifying her 2024 performance evaluation, and by constructively discharging Al-aziz.

71. Defendants' above adverse employment actions occurred, at least in part, because Al-aziz engaged in protected activity under the FMLA and otherwise exercised her FMLA rights.

72. Defendants' above adverse employment actions constitute retaliation and discrimination under the FMLA.

73. Defendants' above adverse employment actions also constitute interference with Al-aziz's FMLA rights, including chilling Al-aziz from exercising her FMLA rights in the future without fear of future retaliation and discrimination.

74. Defendants' above adverse employment actions were in bad faith and a known and intentional violation of Al-aziz's FMLA rights.

75. Defendants did not have reasonable grounds to believe their actions complied with the FMLA.

76. Under the FMLA, Opus is vicariously liable for the illegal acts of Director Militello and Chief HR Kotsilidis.

77. As a direct and proximate result of Defendants' FMLA violations, Al-aziz experienced harm, including loss of her job after taking protected medical leave, loss of compensation, loss of employment benefits, and loss of other pecuniary and compensatory benefits.

78. Al-aziz is entitled to her lost wages, lost front pay, lost back pay, lost job benefits, attorney's fees, an award of liquidated damages, interest thereon, and the other relief sought herein.

## COUNT II
### ADA Violations: Discrimination, Retaliation, and Interference
### [Against Opus only]

79. Al-aziz incorporates her preceding allegations as if restated below.

80. At all relevant times, Al-aziz was an eligible employee under the ADA.

81. At all relevant times, Opus was Al-aziz's eligible employer under the ADA.

82. At all relevant times, Al-aziz was an individual with a disability within the meaning of the ADA—namely, depression and anxiety.

83. At all relevant times, Al-aziz's above disability involved a physical or mental impairment that substantially limited one or more of Al-aziz's major life activities.

84. At all relevant times, Al-aziz was qualified for her position as OR Supervisor and as acting Program Manager.

85. At all relevant times, Al-aziz could perform the essential functions of the above positions, with or without a reasonable accommodation.

86. Under the ADA, Opus is vicariously liable for the illegal acts of Director Militello and Chief HR Kotsilidis.

87. Opus knew or had reason to know of Al-aziz's disability.

11

88. Opus took the above adverse employment actions against Al-aziz, including demotion and constructively discharge, at least in part, because of her disabilities.

89. Al-aziz's above disabilities were a determining factor in Opus taking adverse employment actions against Al-aziz.

90. Opus' above adverse employment actions constitute disability discrimination and retaliation in violation of the ADA.

91. Opus' above adverse employment actions also constitute interference with Al-aziz's ADA rights, including the right to reasonable accommodations.

92. Opus discriminated and retaliated against Al-aziz, and interfered with Al-aziz's ADA rights, with malice or with reckless indifference to Al-aziz's rights protected under the ADA.

93. As a direct and proximate result of Opus' ADA discrimination, retaliation, and interference, Al-aziz has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

94. Based on Opus' unlawful discrimination, retaliation, and interference stated herein, Al-aziz is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## COUNT III
### Violation of PDCRA: Discrimination, Retaliation, and Interference
### [Against all Defendants]

95. Al-aziz incorporates her preceding allegations as if restated below.

96. At all relevant times, Al-aziz was an eligible employee under the PDCRA.

97. At all relevant times, Al-aziz was an individual with a disability within the meaning of the PDCRA, namely depression and anxiety.

98. At all relevant times, Al-aziz's above disabilities involved a physical or mental impairment that substantially limited one or more of Al-aziz's major life activities.

99. Al-aziz's disabilities were unrelated to her ability to perform the duties of her job as OR Supervisor or Program Manager.

100. At all relevant times, Al-aziz was qualified for her position as OR Supervisor or Program Manager.

101. At all relevant times, Al-aziz could perform the essential functions of her positions, with or without a reasonable accommodation.

102. At all relevant times, Defendants, individually and collectively, were Al-aziz's eligible employer under the PDCRA.

103. Opus was Al-aziz's employer under the PDCRA.

104. Director Militello and Chief HR Kotsilidis, as agents of Opus, also qualify as employers under the PDCRA.

105. Under the PDCRA, Opus is vicariously liable for the illegal acts of Director Militello and Chief HR Kotsilidis.

106. Defendants knew or had reason to know of Al-aziz's disabilities.

107. Defendants took adverse employment actions against Al-aziz, including demotion and constructively discharge, at least in part, because of her disability.

108. Defendants took adverse employment actions against Al-aziz, at least in part, because she requested a reasonable accommodation for her disability, including medical leave.

109. Al-aziz's above disabilities were a determining factor in Defendants' decision to take adverse employment actions against Al-aziz.

110. Defendants' took adverse employment actions against Al-aziz constitute disability discrimination and retaliation in violation of the PDCRA.

111. Defendants' adverse employment actions against Al-aziz also constitute interference with Al-aziz's PDCRA rights, including the right to reasonable accommodations.

112. Defendants discriminate and retaliated against Al-aziz and Al-aziz's PDCRA rights, with malice or with reckless indifference to Al-aziz's protected rights under the PDCRA.

113. Defendants interfered with Al-aziz's exercise of her PDCRA rights with malice or with reckless indifference to Al-aziz's protected rights under the PDCRA.

114. Defendants' actions, as well as Opus's other agents, representatives, and employees, were intentional in their disregard for Al-aziz's rights and sensibilities.

115. As a direct and proximate result of Defendants' PDCRA discrimination, retaliation, and interference, Al-aziz has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

116. Based on Defendants' unlawful discrimination, retaliation, and interference stated herein, Al-aziz is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

**COUNT IV**
**Violations of ADA and PDCRA: Failure to**
**Accommodate and Engage in Interactive Process**
**[ADA as to Opus, only; PDCRA as to all Defendants]**

117. Al-aziz incorporates her preceding allegations as if restated below.

118. Both the ADA and PDCRA require an employer to provide reasonable accommodations to qualified individuals with disabilities unless that accommodation would pose an undue hardship.

119. Failure to accommodate and engage in the interactive process are forms of disability discrimination under both the ADA and PDCRA.

120. Al-aziz was a qualified employee under both the ADA and PDCRA, with or without an accommodation, or with an alleged essential job requirement eliminated.

121. As set forth above, Al-aziz was disabled under both the ADA and PDCRA.

122. At all relevant times, Defendants, individually and collectively, were Al-aziz's employer.

123. As set forth above, Defendants refused to engage in the interactive process and accommodate Al-aziz when they unilaterally demoted Al-aziz.

124. Opus' failure to engage in the interactive process and accommodate Al-aziz constitutes a separate and distinct violation of the ADA and PDCRA.

125. Chief HR Kotsilidis and Director Militello's failures to engage in the interactive process and accommodate Al-aziz, collectively and individually, constitutes a separate and distinct violation of PDCRA for which they are personally liable.

126. Defendants' refusal to engage in the interactive process and accommodate Al-aziz was done in bad faith.

127. As a direct and proximate result of Defendants' failure to accommodate and engage in the interactive process, Al-aziz has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

128. Based on Defendants' failure to accommodate and engage in the interactive process, Al-aziz is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## REQUESTED RELIEF

**FOR THESE REASONS**, Plaintiff Sara Al-aziz respectfully requests that this Court:

A.  Enter a money judgment in her favor and against Defendants, jointly and severally, in an amount that the trier of fact finds Plaintiff entitled to, including, without limitation, actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and statutory attorney's fees under the FMLA, the ADA, and the PDCRA.

B.  As to Count I specifically, additionally award Al-aziz 1) her lost or denied wages, salary, employment benefits, and other compensation denied or lost due to Defendants' violations of the FMLA; 2) interest on said wages, salary, and benefits, calculated at the prevailing rate; 3) liquidated damages equal to the aforementioned two sums; 4) reasonable attorney's fees, expert fees, and other costs of this action; and 5) equitable relief this Court deems wise; and

C.  Grant any other relief this Court deems wise and just.

Respectfully submitted,

/s/ R.J. Cronkhite
R.J. Cronkhite (P78374)
Christopher A. Chesney (P80969)
Cronkhite Counsel PLLC
*Attorneys for Plaintiff*
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
T: (248) 220-6031
F: (248) 256-2555

Dated: April 4, 2025                   rj@cronkhitelaw.com

## **JURY DEMAND**

Plaintiff Sara Al-aziz, through her attorneys Cronkhite Counsel PLLC, hereby demands a jury trial for all causes of action so triable by jury.

                Respectfully submitted,

                /s/ R.J. Cronkhite
                R.J. Cronkhite (P78374)
                Christopher A. Chesney (P80969)
                Cronkhite Counsel PLLC
                *Attorneys for Plaintiff*
                370 E. Maple Rd., Third Floor
                Birmingham, MI 48009
                T: (248) 220-6031
                F: (248) 256-2555
Dated: April 4, 2025           rj@cronkhitelaw.com